IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Jody M. Brooks, | : | |
| Plaintiff, | | |
| | : | Civil Action 2:12-cv-434 |
| v. | : | Judge Frost |
| Corolyn W. Colvin, | : | Magistrate Judge Abel |
| Acting Commissioner of Social Security, | | |
| Defendant. | : | |

# Report and Recommendation

Plaintiff Jody M. Brooks brings this action under 42 U.S.C. §§405(g) and
1383(c)(3) for review of a final decision of the Commissioner of Social Security denying
her applications for Social Security Disability and Supplemental Security Income
benefits.  This matter is before the Magistrate Judge for a report and recommendation
on the administrative record and the parties' merits briefs.

**Summary of Issues.**  Plaintiff Brooks maintains that she became disabled on
November 12, 2007, at age 39, due to pain in her back, right hip and knees;
fibromyalgia; panic attacks, anxiety; possible right carpal tunnel syndrome; open sores
under her breasts, stomach and behind; high blood pressure; lung nodules (*PageID* 231);
and diabetes.  (*PageID* 270.)  Plaintiff argues that the decision of the Commissioner
denying benefits should be reversed because:

- The administrative law judge failed to find that plaintiff's mental impairment
  meets the criteria of Listing 12.04;

- The administrative law judge failed to consider all the opinion evidence

as required by SSR 06-3P;

- The Appeals Council's decision to not review the administrative law judge's decision despite the new and material evidence submitted was reversible error;

- The administrative law judge's hypothetical questions posed to the vocational expert did not accurately portray all of Brooks' limitations and violates 20 C.F.R. 404.1545 and SSR 96-8p.

**Procedural History.**  Plaintiff Brooks filed her applications for disability insurance and supplemental security income benefits on July 16, 2008, alleging that she became disabled on November 12, 2007, at age 39.  (*PageID* 191-93, 194-98.)  The applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On October 21, 2010, an administrative law judge held a video hearing at which plaintiff, represented by counsel, appeared and testified.  (*PageID* 100-25.)  A vocational expert also testified.  (*PageID* 126-38.)  On October 26, 2010, the administrative law judge issued a decision finding that Brooks was not disabled within the meaning of the Act.  (*PageID* 50-62.)  On March 28, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (*PageID* 35-39.)

**Age, Education, and Work Experience.**  Brooks was born on March 18, 1968. (*PageID* 191, 226.)  She has a high school education.  (*PageID* 239.)  Brooks previously worked as a cashier and as a general laborer in a warehouse.  (*PageID* 232.)

2

**<u>Plaintiff's Testimony.</u>**

Plaintiff Brooks provided the following testimony. She last worked in November 2007, after having called off numerous time from "hurting." (*PageID* 100-01.) Brooks described her job duties as a cashier checker, spray painter, general office clerk, waitress/server, press operator, warehouse worker, industrial truck operator, and retail clerk. (*PageID* 102-11.)

Brooks had a driver's license but only drove about twice a month due to her pain medication and trouble with her right hip. (*PageID* 112.)

At the time of the hearing, she lived with her parents and 13 year old son. During a typical day, she watched television or read, noting, "I don't do a whole lot of anything anymore." She tried to attend her son's football game, but left early due to feeling very sleepy and having pain in her lower back. (*PageID* 113.)

Brooks suffers from PAD (peripheral artery disease), with blockages in her neck and both legs, ulcerative colitis, diabetes, a thyroid condition, fibromyalgia, carpel tunnel on the right hand, bursitis on her right hip and degenerative disc disease. (*PageID* 114, 117.) She suffered from depression or anxiety and could not sleep at night. (*PageID* 115.)

As to her functional limitations, Brooks said she suffered from pain in her lower back, right hip, neck, shoulders, arms, and legs. (*PageID* 116-17.) She had weighed up to 245 pounds, but at the time of the hearing, she weighed 215 pounds. (*PageID* 117.) Brooks said her diabetes is uncontrolled. (*PageID* 118.)

3

When discussing her physicians, Brooks said her family physician had mentioned he felt she was disabled (*PageID* 121-22), but her pain management physician, Dr. Manocha, indicated she would not be as disabled if she had more schooling.  (*PageID* 123-24.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  Nonetheless this Report and Recommendation will summarize that evidence in some detail.

**Physical Impairments.**

Sachit Manocha, M.D./Columbus Interventional Pain Center.  On March 4, 2008, Dr. Manocha, a pain management specialist, initially evaluated plaintiff.  (*PageID* 346, 483-84, 493-94.)  Brooks was referred by her primary care physician, Dr. Olson. He was concerned about continuing to prescribe pain medication.  (*PageID* 346.) Brooks told Dr. Manocha she had suffered from pain in her lower back and right hip since has an accident 1993, in which she was driving a forklift and backed into a pole.  She had pain in her neck that went up the head.  She rated her lower back pain as a 5 on an analog pain scale and described it as a dull, stabbing, bruised feeling shooting down the right leg with spasms of the right heel.  She denied any pain on the left side.  She also reported she had a torn meniscus in the right knee.  Brooks noted her neck pain was much less than her lower back pain, but both got exacerbated when she sat or stood for a long time.  Laying down on her back with pillows under her knees decreased the pain

to some extent.  Dr. Manocha noted her past medical treatment has included medication and that she denied getting physical therapy. (*PageID* 493.)

Dr. Manocha reviewed an October 2007 MRI of the lumbar spine which showed multilevel disc degeneration with mild spinal stenosis and multilevel neuroforaminal stenosis from disc protrusions, particularly at L3-L4, L4-L5, and L5-S1.  It also showed mild right-sided foraminal stenosis at L3-L4 and a small annular tear at L4-L5.  (*PageID* 493-94.)

Upon examination, Dr. Manocha found plaintiff was overweight. She did not appear to be in any major distress.  Her behavior and disposition was normal.  Her gait was normal.  Her coordination appeared normal.  Cervical range of motion caused a slight increase in her pain on extension and left-sided rotation.  Lumbar range of motion produced pain at 10 degrees extension, forward flexion to 70 degrees produced a stretch on her back.  Spurling test was positive, more on the left side, for neck and shoulder pain.  Straight leg raise was negative on both sides.  Flexion, abduction, rotation at the hips was positive on the right side.  There was also tenderness over the right sacroiliac joint.  There was less tenderness over the right posterior superior iliac spine.  Motor examination in all muscle groups in the lower extremities appeared quite normal.  Sensation to touch and pinprick in all dermatomes was normal.  She had 14 of 18 fibromyalgia points.  Deep tendon reflexes in the upper extremities were 2/4.  In lower extremities were 2/4, except for the right knee which was 1/4. Dr. Manocha diagnosed Brooks with fibromyalgia, lumbar herniated disc with likely discogenic pain, lumbar

5

radiculitis, cervical facet arthritis, right carpal tunnel syndrome, and right sacroiliac joint arthritis.  He ordered a cervical spine MRI, (*PageID* 493-94), which was unremarkable and showed no evidence of focal disc protrusion or stenosis.  (*PageID* 487.)

From March 11, 2008 through March 31, 2009, Brooks received pain injections in her trigger points and sacroiliac joint injections.  (*PageID* 347-57, 489-506).Dr. Manocha's office notes for May 6, 2009 indicate that the injections did not help. Brooks trochanter bursa was tender. Diagnoses included fibromyalgia, lumbar degenerative disc disease, hip osteoarthritis, and sacroiliac arthritis. (*PageID* 474.)

On December 29, 2009, Brooks reported to Dr. Manocha that her pain level was at 7/10 and constant.  Her pain was aggravated by bending over, twisting, walking or standing. Medications provide her with 50% relief from her pain.  Brooks also said the injection site was very tender for 4-5 days after the trochanteric bursa injection. She had relief for few days, but her blood sugar was elevated.  She reported that she had been advised by her primary care physician not to get any steroid injections until her sugar was stabilized.  She complained of worsening pain in her right hip pain radiating to the pelvis which was worsening and in her lower back. She found it very difficult to get around.   Her medications had been tapered down at the last visit, and she noted she could not bear the pain, so she had to "take more pill, ran out of medication." Dr. Manocha  adjusted her pain medication (10 mg-325 mg Percocet, every 6-8 hours as

needed; 60 mg Tramadol every 8 hours, as needed; 10 mg Ambien in the evening; and Klonopin ) and ordered an MRI.  (*PageID* 545-47.)

The January 2010 MRI of the right hip revealed degenerative disc disease at L4-5, L5-S1; osteoarthritic changes of both hip joints and both sacroiliac joints; right hip labral tear with detachment involving the anterolateral portion of the superior labrum; and bilateral hamstring tendinosis.  (*PageID* 525.)

Brooks continued to treat with Dr. Manocha through at least April 2010. He continued to prescribe pain medication.  (*PageID* 530-47.)

Myung Cho, M.D./Dimitri Teague, M.D.  On December 10, 2008, Dr. Cho, a state agency physician, conducted a physical residual functional capacity assessment based on Brooks' record.  (*PageID* 418-25.)  Dr. Cho found that Brooks retained the ability to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour work day, and push or pull was unlimited.  (*PageID* 419.)  He found Brooks would be limited to frequently climb ramps and stairs, balance, stoop, kneel and crawl, but she could only occasionally climb ladders, ropes, or scaffolds and crouch.  (*PageID* 420.)  Dr. Cho concluded that Brooks' symptoms were not attributable to a medically determinable impairment.  (*PageID* 423.)  Dr. Cho found Brooks' statements were only partially credible, noting that Brooks alleges disability due to symptoms of musculoskeletal pain, but she is able to effectively ambulate and move about to perform most daily activities.

7

(*Id.*)  Another state agency physician, Dr. Villanueva affirmed Dr. Cho's assessment in May 2009.  (*PageID* 509.)

 <u>Kevin Olson, D.O./Eric Chilton, PA-C.</u>  Since 1993, Dr. Olson has been Brooks' primary care physician. On March 30, 2009, Mr. Chilton, Dr. Olson's physician's assistant, indicated in response to a questionnaire sent by the Bureau of Disability Determination to Dr. Olson, that Brooks had no problems achieving diabetic control, no motor loss or sensory deficits, and no evidence of neuropathy or retinopathy.  (*PageID* 468-70.)

 Based on the course of treatment and a September 1, 2010 examination, Mr. Chilton, completed a Basic Medical Form for the Licking County Department of Jobs and Family Services on Brooks' behalf.  He described Brooks' medical condition as type II diabetes with neuropathic pain, colitis and high lipids.  He further noted that Brooks' health status was improving with treatment.  Mr. Chilton opined that Brooks could stand/walk two to three hours in an eight hour workday and lift and carry 6-10 pounds frequently.  Mr. Chilton also opined that Brooks had moderate limitations with respect to repetitive foot movements.  Brooks had no limitations with sitting, pushing/pulling, bending, reaching and handling.  Mr. Chilton concluded that plaintiff was not employable and those limitations were expected to last between 90 days and nine months.  (*PageID* 638-39.)

**Appeals Council Exhibits.**

Based on the course of treatment and a December 16, 2010 examination, Dr. Olson completed a Basic Medical Form for the Licking County Department of Jobs and Family Services on Brooks' behalf. He described Brooks' medical conditions as type II diabetes, spine stenosis, fibromyalgia, degenerative joint disease, osteoarthritis, bursitis, peripheral artery disease, tenosynovitis, carpel tunnel syndrome on the right and hypertension. He noted her health status was good/stable with treatment. Dr. Olson reported that plaintiff has had "multiple medial problems for multiple years." He opined that Brooks could stand and walk less than one hour in an 8-hour workday, could only lift up to 5 pounds. According to Dr. Olson, Brooks was extremely limited in pushing/pulling, bending, reaching, handling and repetitive foot movements. Dr. Olson he based his opinion on positive MRIs, ultrasounds, x-rays, lab tests and EMG. He concluded that Brooks was unemployable, and that the limitations were expected to last 12 months or longer. (*PageID* 642-43.)

**Psychological Impairments**

Margaret Smith, Ph.D. On October 29, 2008, Dr. Smith performed a disability evaluation examination for the Bureau of Disability Determination. (*PageID* 427-93). Brooks reported depressive symptoms dating back to her childhood. She also described experiencing panic attacks, generally when in public, and frequent, disturbing nightmares impacting her sleep. Brooks further reported crying episodes, fatigue, and

memory problems.   She had never been hospitalized or received any treatment from a psychiatrist or psychologist.

Dr. Smith found Brooks' mood and affect were normal, she displayed no overt signs of anxiety and was attentive and concentrated during the evaluation.  Dr. Smith reported that Brooks walked with a normal gait and upright posture.  During cognitive functioning test, Dr. Smith found Brooks' ability to abstract fell in the upper borderline range.  (*PageID* 430.)  She diagnosed Brooks with major depression, recurrent, severe and panic disorder without agoraphobia.  She assigned Brooks a Global Assessment of Functioning ("GAF") score of 45.  (*PageID* 431.)

Dr. Smith concluded that Brooks' ability to relate to others, including fellow workers and supervisors may be markedly impaired due to depression and panic disorder.  She did not report any significant history of problems in work relationships or with explosive outbursts.  However, she may be more limited due to panic attacks.  She would probably do best in work settings requiring minimal interaction with the public.  Dr. Smith found that Brooks' ability to understand, remember, and follow instructions was moderately impaired.  She was able to complete simple and routine activities of daily living and she showed no comprehension or memory problems during the interview.  She was assessed as being mentally able to understand, remember, and follow instructions for simple and repetitive work tasks.  Dr. Smith found that Brooks' ability to maintain attention, concentration, persistence, and pace to perform routine tasks was markedly impaired by depression and panic disorder.

However, she was attentive and concentrated during the interview.  Problems might develop with pace and persistence over prolonged periods of time.  Brooks' ability to withstand the stress and pressures associated with day-to-day work activities was markedly impaired.  Dr. Smith concluded that Brooks had the mental stress tolerance to perform only simple and repetitive work tasks, which do not involve duties necessitating public interaction.  (*PageID* 432).

Melanie Bergsten, Ph.D.  On November 17, 2008, Dr. Bergsten, a state agency psychologist, completed a mental residual functional capacity assessment and a psychiatric review technique.  (*PageID* 449-66.)  Dr. Bergsten found plaintiff was moderately restricted in her activities of daily living. She would have moderate difficulties in maintaining social functioning and maintaining concentration, persistence, and pace. She had no episodes of decompensation.  (*PageID* 459.)  Dr. Bergsten further determined that the evidence did not establish the presence of the "C" criteria.  (*PageID* 460.)

Dr. Bergsten opined that plaintiff was moderately limited in her abilities to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and

11

respond appropriately to changes in the work setting.  Dr. Bergsten found that the remaining mental work activities were either not significantly limited or there was no evidence of limitation based on her review of the record.  (*PageID* 463-64.)

Dr. Bergsten noted that Brooks' statements were credible.  (*PageID* 465.)  Dr. Bergsten gave only partial weight to Dr. Smith's conclusions and concluded that the objective evidence supported only moderate limitations in the four work related domains.  She concluded that Brooks was capable of performing simple and complex tasks in situations where duties are relatively static and required only brief and superficial contact with others.  (*PageID* 466.)

**Appeals Council Exhibits.**

Dr. Olson also completed a Mental Functional Capacity Assessment for the Department of Job and Family Services.  He opined that Brooks was markedly limited in understanding and memory and extremely limited in sustained concentration and persistence, social interaction and adaptation.  (*PageID* 644-45.)

**Administrative Law Judge's Findings.**  The administrative law judge found that:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2.  The claimant has not engaged in substantial gainful activity since November 12, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis of the hips, with right hip

bursitis; obesity; and depression with panic disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [administrative law judge] find[s] that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently; sit, stand and/or walk approximately 6 hours in an 8-hour day with normal breaks, but with the ability to change positions (i.e. a sit/stand option) on an hourly basis; perform no more than frequent push and/or pull; frequently reach bilaterally in all directions, but only occasionally engage in overhead reaching; occasionally operate foot controls; frequently balance, stoop, kneel, crouch, and crawl; and occasionally climb ramps and stairs. She must never climb ladders, ropes, or scaffolds and must avoid concentrated exposure to unprotected heights. The claimant is limited to unskilled work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 18, 1968 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 12, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*PageID* 52-61.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to find that Brooks' mental impairment meets the criteria of Listing 12.04.  Plaintiff contends that based on the medical

14

evidence of record, she meets all the criteria of Listing 12.04.  (Doc. 11 at
*PageID* 655.)  Plaintiff argues the administrative law judge never specifically
stated whether Brooks meets the "A" criteria.  (*Id.* at *PageID* 656.)   Plaintiff
also contends that the medical evidence of record clearly demonstrates that,
contrary to the findings of the administrative law judge, Brooks did meet the
"B" criteria of Listing 12.04.  (*Id.* at *PageID* 656-60.)  The administrative law
judge's findings of no more than a "mild" limitation in any of the functional
domains of the "B" criteria were unsupported by any medical evidence of
record --- and the evidence he cited to support those findings was
misinterpreted and irrelevant.  (*Id.*)

- The administrative law judge failed to consider all the opinion evidence
  as required by SSR 06-3P.  Plaintiff argues that the administrative law judge's
  residual functional capacity findings are not supported by substantial
  evidence but are merely based on his own opinion of what the medical
  evidence shows. He gave limited weight to the state agency reviewer's opinion
  because of inconsistencies with the evidence and then gave little weight to the
  opinion of Mr. Chilton, the physician's assistant from Brooks' primary care
  office through an improper evaluation of required factors.  According to
  Brooks, given there were no other examining or treating source opinions and
  there was no medical expert testimony, the administrative law judge

improperly followed SSR 06-3p and based his residual functional capacity finding on his own medical opinion. (*Id.* at *PageID* 660-63.)

- The Appeals Council's decision not to review the administrative law judge's decision despite the new and material evidence submitted was reversible error. Brooks seeks remand for the taking of new and material evidence. The two opinions provided by Brooks' primary care physician, Dr. Olson were originally submitted to the Social Security Administration's Appeals Council, but the documents were not considered. According to Brooks, the Appeals Council failed to either evaluate that evidence as required by regulation, or find the evidence to be material. Brooks argues the evidence supports the finding that plaintiff met the requirements of Listing 12.04. (*Id.* at *PageID* 664-66.)

- The administrative law judge's hypothetical questions posed to the vocational expert did not accurately portray all of Brooks' limitations and violates 20 C.F.R. 404.1545 and SSR 96-8p. Brooks argues that the hypothetical posed to the vocational expert did not accurately portray the moderate limitation of her ability to maintain concentration, persistence, and pace. Because the administrative law judge's hypothetical residual functional capacity finding did not accurately describe all of Brooks' impairments, his finding that there were a substantial number of jobs in the economy she could perform is unsupported by substantial evidence. (*Id.* at *PageID* 667-70.)

16

**Analysis.**

Remand under Sentence Six of 42 U.S.C. § 405(g). Under Sentence Six of 42 U.S.C. §405(g), this Court may remand a case to the Social Security Administration "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). A Sentence-Six remand for consideration of additional evidence is warranted only if (1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing, and (2) the evidence is new and material. 42 U.S.C. § 405(g); *see Melkonyan*, 501 U.S. at 89; *see also Bass II v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). Plaintiff bears the burden of establishing these two remand requirements. *Hollon ex rel. Hollon v. Commissioner of Social Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff contends that Dr. Olson's physical and mental residual functional capacity assessments submitted to the Appeals Council were new and material evidence and she can demonstrate good cause for not submitting them before the administrative law judge's decision. (Doc. 11 at *PageID* 663-67.)

Defendant maintains that plaintiff has not properly sought remand under sentence six and the evidence submitted to the Appeals Council does not provide a basis for remand. Defendant argues that Brooks has not provided an adequate explanation as to why evidence from her treating physician could not have been

17

obtained prior to the hearing and the administrative law judge's decision date.  (Doc. 16 at *PageID* 689-91.)

Brooks filed a request for review to the Appeals Council on January 13, 2011. (*PageID* 41-46.)  Brooks submitted Dr. Olson's physical and mental residual functional capacity assessments to the Appeals Council.  (*PageID* 642-46.)  On March 28, 2012, the Appeals Council denied Brooks' request for review. The Notice of Appeals Council Action states that in denying review the Appeals Council "considered the reasons you disagree with the decision" and the December 16, 2010 residual functional capacity assessments by Dr. Olson for the Ohio Department of Job and Family Services.  (*PageID* 35 and 38.)  The Notice further states, "We found that this information does not provide a basis for changing the Administrative Law Judge's decision."  (*PageID* 36.) The Council's action stated that "the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security."  (*PageID* 35.)

Although this evidence was submitted to the Appeals Council, it may be a basis for a remand by the Court if the "good cause" standard is met.  *See Cotton v. Shalala*, 2 F.3d 692 (6th Cir. 1993); *see also Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001).  Plaintiff has presented circumstances sufficient to establish "good cause" for not filing the additional evidence in the record before the administrative law judge's hearing and subsequent decision.  Although plaintiff listed Dr. Olson as her treating physician since 1990 and the doctor who prescribed the majority of her medications (*PageID* 234, 238, 271-72) and his physician's assistant's residual functional capacity evaluation stated the opinion that

18

Brooks could not work, the Commissioner did not ask Dr. Olson to make a residual functional capacity assessment. He was asked to fill out a questionnaire, mainly regarding Brooks' diabetes. There were no questions about the depression and anxiety he treated her for. Dr. Olson's office did not provide any of his office note, and there is no indication in the record that the Bureau of Disability Determination followed up to request them. Since Dr. Olson had been treating Brooks for over 15 years, those office notes would have given a valuable longitudinal picture of her impairments.

Dr. Olson's residual functional capacity assessments were not prepared until after the administrative record had closed following the administrative law judge's hearing in October 2010. It was not available before the administrative law judge's hearing.

Turning to materiality, plaintiff's additional evidence (1) must be relevant and probative of her condition prior to the administrative law judge's decision, and (2) must establish a reasonable probability that the administrative law judge would have reached a different decision if he had considered the evidence. *See Sizemore v. Secretary of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hollon*, 447 F.3d at 488. The new evidence consists of residual functional capacity assessments by Brooks' treating physician. The two assessments are material. They assess plaintiff's mental health and exertional work limitations during the time period at issue during the administrative law judge's proceedings. Dr. Olson's report tends to support her testimony during the administrative law judge's hearing about her mental health struggles and physical

19

limitations, and it is therefore probative of her credibility, if not also her disability

status.  In addition, there is no opinion from a treating source other than Dr. Olson's

physician assistant in the record.  The evidence was not generated for the purpose of

attempting to prove disability in contrast to evidence produced by continued medical

treatment nor was it generated to dispute any of the Commissioner's findings.

A treating doctor's opinion[1] on the issue of disability is entitled to greater weight

than that of a physician who has examined plaintiff on only one occasion or who has

merely conducted a paper review of the medical evidence of record.  20 C.F.R. §

404.1527(d)(1).  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of*

*Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's

regulations explain that Social Security generally gives more weight to a treating

doctors' opinions because treators are usually "most able to provide a detailed,

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.,* the error is *de minimus. Wilson,* 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id. See, Grayheart v. Commissioner of Social Security,* __ F.3d ____, _____, 2013 WL 896255, *14 (6th Cir. March 12, 2013).

longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2). When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

---

[2]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See §404.1508.

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p[3]. *Grayheart v. Commissioner of Social Security*, __ F.3d ____, _____, 2013 WL 896255, *9 and *10 (6th Cir. March 12, 2013). The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[4] *Grayheart,* above, __ F.3d at _____, 2013 WL 896255, *9. Even then, the Commissioner is required to carefully consider that opinion and determine what weight to assign to it. 20 C.F.R. § 404.1527(c)(1) through (6).

---

[3]Social Security Ruling 96-2p provides, in relevant part:

. . .

6.  If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.,* it must be adopted.

[4]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

Because the Commissioner's regulations give great weight to a treating source's opinions regarding a claimant's residual functional capacity and require the decision-maker to give good reasons for rejecting them, plaintiff's has demonstrated "good cause" and that the December 2010 residual functional capacity assessments are material.  Plaintiff having demonstrated "good cause", I conclude that a remand of this matter to the Social Security Administration is warranted under sentence six of 42 U.S.C. §405(g). Under these circumstances, the Court need not consider plaintiff's additional assignments of error.  *See Melkonyan*, 501 U.S. at 98; *see Raitport v. Callahan*, 183 F.3d 101, 103-04 (2d Cir. 1999)(sentence-six remand involves no substantive ruling on the correctness of an administrative decision).

On remand, the administrative law judge should evaluate the opinion of Eric Chilton, a physician assistant, in accordance with the Commissioner's regulations. A physician's assistant working for a primary care doctor is not an acceptable medical source.  20 C.F.R. § 404.1513(a).  Nonetheless, the Commissioner will consider evidence from other sources "to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d).  Social Security Ruling 06-03p, 2006 WL 2329939, provides that the same factors used to evaluate the opinions of "acceptable medical sources," see 20 C.F.R. §§ 404.1427(d) and 416.927(d), "can be applied to opinion evidence from 'other sources.'" See, *Gayheart v. Commissioner of Social Security*, _ _ F.3d ____, _____, 2013 WL 896255, *14 (6th Cir. March 12, 2013). Those factors include:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and
- Any other factors that tend to support or refute the opinion.

SSR 06-03p. These factors "represent basic principles that apply to the consideration of all opinions from medical sources . . . who have seen the individual in their professional capacity." *Id.*

 **Conclusions.** For the reasons set forth above, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **REMANDED** to the Commissioner of Social Security under the provisions of 42 U.S.C. §405(g), sentence 6, to consider the new and material evidence presented by the plaintiff.

 This is a pre-judgment remand.  *See, Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 174 (6th Cir. 1994).  While the Commissioner is considering the new and material evidence on remand, this case is **ADMINISTRATIVELY CLOSED.**

 If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

 The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R. Abel               
United States Magistrate Judge